**In re DENVER & R. G. WESTERN R. CO.**

No. 8669.

District Court, D. Colorado.

Jan. 23, 1936.

Henry McAllister, of Denver, Colo., and Pierce & Greer, of New York City, for debtor.

Hughes & Dorsey, of Denver, Colo., and Stewart & Shearer, of New York City, for United States Trust Co. of New York, trustee.

James B. Alley, Cassius M. Clay, Max O'Rell Truitt, and W. Campbell Armstrong, all of Washington, D. C., and James A. Marsh, of Denver, Colo., for Reconstruction Finance Corporation.

G. Dexter Blount, of Denver, Colo., and Guggenheimer & Untermyer, Samuel Untermyer, and William L. Cohn, all of New York City, for Samuel Untermyer and others.

Henry W. Anderson, of Richmond, Va., for Metropolitan Life Ins. Co. and Prudential Ins. Co. of America.

Ralph Hartzell, of Denver, Colo., and Mitchell, Taylor, Capron & Marsh, of New York City, for City Bank Farmers Trust Co., trustee.

Lewis & Grant, Mason A. Lewis, and F. W. Sanborn, Jr., all of Denver, Colo., and Milbank, Tweed, Hope & Webb, Arthur A. Gammel, and W. Crosby Roper, Jr., all of New York City, for Chase Nat. Bank of New York, trustee.

Myles P. Tallmadge, of Denver, Colo., and Larkin, Rathbone & Perry and A. M. Lewis, all of New York City, for Central Hanover Bank & Trust Co., trustee.

Erskine R. Myer, of Denver, Colo., for Moffat Tunnel Commission and Raymond L. Sauter.

Horace N. Hawkins, of Denver, Colo., for taxpayers and property owners of Moffat Tunnel Dist.

J. F. B. Mitchell, of New York City, for various bondholders of debtor.

SYMES, District Judge.

We have before us the separate petitions of the United States Trust Company, as trustee, the City Bank Farmers Trust Company, as trustee, the Chase National Bank of New York, as trustee, the Central

Hanover Bank & Trust Company, as trustee, and what might be designated as the joint petition of Samuel Untermyer and other members of the Untermyer family, as trustees, to intervene generally in this proceeding.

Each of the first four petitioners is trustee under different mortgages on the property of the debtor, or a part thereof, all in default. Each alleges it is required to take certain proceedings enjoined upon them by the respective mortgages, and to represent their trust and their cestuis in the proceedings.

The petitioners in the "Untermyer petition," so called, are trustees of certain family trusts of the Untermyer family. It is alleged the petitioners named are the owners of bonds of the debtor issued under the mortgages, in the aggregate principal amount of $564,500, and of $350,000 par value of the preferred stock. It is the desire of the petitioners, if permitted, to participate actively in this proceeding for the protection of their interests in the various steps of reorganization; that Mr. Samuel Untermyer, by reason of his experience as a lawyer and financier in railroad reorganizations, etc., is "peculiarly competent to consider, assist in formulating, and to advise the court in connection with a plan of reorganization," etc. The first four petitions disclose the same relationship between the petitioners and the debtor and similar grounds for intervention, so may be considered as one.

Section 77 (c) (13) of the Bankruptcy Act, as amended by Act August 27, 1935 (title 11, § 205, U.S.C.A., subsection (c), par. 13), provides, inter alia: "The debtor, any creditor or stockholder, or the duly authorized committee, attorney or agent of either or the trustee or trustees of any mortgage, deed of trust or indenture pursuant to which securities of the debtor are outstanding, *shall have the right to be heard* on all questions arising in the proceedings, and, *upon petition therefor and cause shown*, any such person or any other interested party may be permitted to *intervene*. The judge may, after hearing, make reasonable rules defining the matters upon which notice shall be given to other than interveners and the manner of giving such notice."

■ First, the paragraph quoted grants to debtors, creditors, stockholders, trustees of mortgages, etc., the right to be heard on all questions arising in the proceeding.

The language is unqualified, and the right granted, as far as it goes, is absolute. It does not carry with it the right to notice, nor do those named become parties to the proceeding, etc., and the failure to give notice would not be a jurisdictional defect, nor does it include the right to initiate proceedings without the permission of the court.

■ Next it provided that any one of the above class, or other interested party, may be permitted to intervene upon petition and cause shown. This is a recognition of the equity rule that intervention generally is a matter of discretion; for, except where the right is absolute, the grant or refusal is not final and lies within the sound discretion of the court. Credits Commutation Co. v. United States, 177 U.S. 311, 20 S.Ct. 636, 44 L.Ed. 782; Western Union Telegraph Co. v. United States & M. T. Co. (C.C.A.) 221 F. 545. Yet situations may arise in one of these proceedings where the denial of the right to intervene would be a plain abuse of discretion and subject to correction by an appellate court. United States Trust Co. v. Chicago Terminal T. R. Co. (C.C.A.) 188 F. 292.

I am persuaded that Congress did not intend to do away with the limitations on the number of parties that obtained under the equity practice. This section makes no one a "party" in the conventional sense of that word. Quite the contrary in fact, the object of section 77 (11 U.S.C.A. § 205) is simplification of procedure in order to expedite a speedy and economical reorganization of railroads as going concerns. Continental Illinois Nat. Bank & Trust Co. v. Chicago, Rock Island, etc., R. Co., 294 U. S. 648, 55 S.Ct. 595, 79 L.Ed. 1110. To this end it enlarges and makes exclusive the jurisdiction of the court, and confirms all equity powers formerly exercised by the court not inconsistent with the act.

An enumeration of the possible questions that come before the court, both in the routine management of the property confided to its care, and in effecting a reorganization, are so numerous and varied that to require a notice to every possible interested party would be nothing short of ridiculous, bog down the proceedings by the sheer weight thereof, and greatly increase the expense. Sands v. E. S. Greeley & Co. (C.C.) 80 F. 195. Nor is there any necessity to have all before the court. The rights of every one are protected, irrespective of whether they appear or not.

█ A plan of reorganization must first be submitted to and approved by two-thirds of the bondholders or a majority of the stockholders whose rights are affected thereby, before approval by the Interstate Commerce Commission. A full hearing with notice to all creditors and stockholders is required of that body, and the jurisdiction of the District Court, to which the plan is finally submitted for approval, depends upon due notice to all parties in interest, a full hearing, and consideration of the rights of all parties affected.

Many other provisions of the act grant the right to a hearing to the real interested parties at different stages of the proceedings on all major matters. We conclude that intervention, as distinguished from the mere right to be heard, is still subject to the well-known rule of equity that "sound discretion * * * is the controlling guide of judicial action in every phase of a suit in equity." Pennsylvania v. Williams, 294 U.S. 176, 55 S.Ct. 380, 383, 79 L.Ed. 841, 96 A.L.R. 1166.

█ Palmer v. Bankers' Trust Co., 12 F. (2d) 747, went to the Circuit Court of Appeals from this district and is the leading case on the question immediately before us. The court said [12 F.(2d) 747, page 752]: "In some cases the facts and circumstances may be such that to deny the intervention would be error on the part of the chancellor; for example, where the petitioner, not being already fairly represented in the litigation, is asserting a right which would be lost or substantially affected if it could not be asserted at that time and in that form. In such cases the right of intervention is often termed absolute." (Citing authorities.) This case was later affirmed in Whittaker v. Brictson Mfg. Co. (C.C.A.) 43 F.(2d) 485. The class of cases referred to in the authorities cited, includes those in which a lien is claimed upon the property within the exclusive jurisdiction and disposition of the court. No other court has jurisdiction to hear such questions, and the inability of the party to obtain relief requires the granting of the petition.

█ Mortgage trustees are, generally speaking, within this class because they represent thousands of security holders, whose interests they are not only empowered, but required, to protect in any legal proceedings affecting them, and in the absence of allegations of fraud, refusal of the trustee to act, or other good cause, bondholders may, in the discretion of the court, be refused permission to become parties. Convenience dictates that they be represented as a class rather than individually.

█ In equity the joinder of a particular party not before the court in person may be dispensed with if he is so represented by others that his interests receive actual and efficient protection. Wallace v. Adams, 204 U.S. 415, 27 S.Ct. 363, 51 L. Ed. 547; United States v. "Old Settlers," 148 U.S. 427, 13 S.Ct. 650, 37 L.Ed. 509. So where a class is already adequately represented, the court has discretion to refuse members of the same class the right to intervene. In re Engelhard & Sons, 231 U. S. 646, 34 S.Ct. 258, 58 L.Ed. 416. For these reasons we conclude that the petitions of these four trustees should be granted.

█ The fifth petition stands on a different footing. True, the petitioners therein are owners of and represent a large number of security holders, but the mere fact that they may represent a large amount, either in numbers or amount, is not compelling. As stated, they will be adequately represented as bondholders before the court by the trustees of the respective mortgages, and as stockholders it would seem best to wait until they or others form a committee of stockholders, by whom they may be more conveniently represented. To allow them in at this time would require the granting of the same privilege to every individual bondholder, which, for the reasons already stated, is not necessary or desirable. As Judge Faris has said, in the Matter of Missouri Pacific R. Co.:[1] "Heretofore, ex gratia, I have allowed general interventions by persons and aggregations, who were at most entitled to come in specially. This action has had the effect to induce numerous others to seek the privilege of general intervention; so that, the case has become unconscionably complicated, and if this grace is broadened, it will ultimately become so unwieldy as to preclude orderly administration."

So without prejudice the Untermyer petition is denied.

█ Attention is directed to rule 21 of this court. Five days' notice of all hearings in this proceeding will be sufficient, except when otherwise provided for.

---

[1] Unreported oral opinion.