**In re NEW YORK, O. & W. RY. CO.**

District Court, S. D. New York.

Dec. 3, 1937.

710

Paul Windels, Corp. Counsel, of New York City (Oscar S. Cox and Meyer Bernstein, both of New York City, of counsel), for City of New York.

Elbert N. Oakes, of New York City, for trustee.

HULBERT, District Judge.

The Trustee of the Debtor, by this application, seeks to have this Court determine, under Section 64a of the National Bankruptcy Act, 11 U.S.C.A. § 104 (a), whether the Debtor is liable for a utility tax imposed by the City of New York, and if so, that this Court review, revise and fix the Debtor's liability therefor.

Pursuant to enabling legislation of the State of New York (Chapter 815, Laws of 1933; Chapters 302 and 873, Laws of 1934; Chapter 601, Laws of 1935; Chapter 414, Laws of 1936; Chapter 327, Laws of 1937), the Municipal Assembly of the City of New York adopted certain Local Laws imposing taxes at the rate of 1½% (later increased to 3%) upon the gross income of certain utilities as therein defined covering the period subsequent to September 1, 1933, which are by statute to be devoted exclusively to the relief of the needy unemployed. The constitutionality and validity thereof have heretofore been sustained in both State and Federal Courts. New York Steam Corporation v. City of New York, 1935, 268 N.Y. 137, 197 N.E. 172, 99 A.L.R. 1157; Southern Boulevard Rail-

road Company v. City of New York, 2 Cir., 1936, 86 F.2d 633, certiorari denied May 24, 1937, 301 U.S. 703, 57 S.Ct. 932, 81 L.Ed. 1357.

The pertinent provisions of Local Law No. 30, of 1935, p. 157, which are representative of all the local laws concerned, read as follows:

"§ 2. *Imposition of excise tax.* Notwithstanding any other provision of law to the contrary, for the privilege of exercising its franchise or franchises, or of holding property, or of doing business in the city of New York, from January first, nineteen hundred and thirty-six, to June thirtieth, nineteen hundred and thirty-six, or any part of such period, every utility doing business in the city of New York and subject to the supervision of either division of the department of public service, shall pay to the comptroller of the city of New York an excise tax which shall be equal to three per centum of its gross income for the period from January first, nineteen hundred and thirty-six to June thirtieth, nineteen hundred and thirty-six, and every other utility doing business in the city of New York shall pay to the comptroller of the city of New York an excise tax which shall be equal to three per centum of its gross operating income for the period from January first, nineteen hundred and thirty-six, to June thirtieth, nineteen hundred and thirty-six. Such tax shall be in addition to any and all other taxes and fees imposed by any other provision of law and shall be paid at the time and in the manner hereinafter provided, but any utility subject to tax hereunder shall not be liable to any tax under local law of the local laws of the city of New York for the year nineteen hundred and thirty-five, board of estimate and apportionment introductory number ninety-five of the year nineteen hundred and thirty-five, with respect to its gross income or gross operating income as the case may be."

Section 6 provides for:

1. Notification to the Debtor by the comptroller of his determination of tax liability;

2. Application within thirty days thereafter to the comptroller for a hearing;

3. Presentation to the comptroller of evidence in support of the Debtor's contentions as to tax liability;

4. Final notice of determination by comptroller; and

5. Judicial review thereof.

Section 6, in part, reads as follows: "In case the return required by section four hereof shall be insufficient or unsatisfactory to the comptroller, or if such return is not made as required, and if the maker fails to file a corrected or sufficient return within twenty days after the same is required by notice from the comptroller, the comptroller shall determine the amount of tax due from such information as he is able to obtain, and if necessary, may estimate the tax on the basis of external indices. * * * Such determination shall finally and irrevocably fix such tax unless the person against whom it is assessed shall within the thirty days after the giving of notice of such determination apply to the comptroller for a hearing or unless the comptroller of his own motion shall reduce the same. * * * The determination of the comptroller may be reviewed by certiorari if application therefor is made within thirty days after the giving of notice of such determination. An order of certiorari shall not be granted unless the amount of any tax sought to be reviewed, with penalties thereof, if any, shall be first deposited with the comptroller and an undertaking filed with the comptroller, in such amount and with such sureties as a justice of the supreme court shall approve, to the effect that if such order be dismissed or the tax confirmed the applicant for the writ will pay all costs and charges which may accrue in the prosecution of the certiorari proceeding."

In accordance with these statutes, the New York, Ontario & Western Railroad Company filed returns with the Comptroller of the City of New York. These returns contained no figures but in lieu thereof it was stated: "Counsel advises we have no gross income from business conducted wholly within the City of New York."

No tax has been paid to the City.

On July 2, 1936, the Comptroller made a determination of deficiency in tax and penalties under Local Law No. 19 of 1933, p. 127, for the period Sept. 1, 1933 to Feb. 28, 1934, amounting to $1,425.03; under Local Law No. 10 of 1934, p. 115, for the period from March 1, 1934 to Dec. 31, 1934 amounting to $2,869.18; under Local Law No. 21 (published as No. 22) of 1934, p. 151, for the period from Jan. 1, 1935 to Dec. 31, 1935 amounting to $6,814.86,

which, with penalties thereon, amounted to a total sum of $12,940.06.

In compliance with the statute, the Railroad Company protested the determination within the thirty day period and applied for a hearing and such hearing was held before the Comptroller's representative. The Railroad Company appeared and offered testimony in support of its contention that it was not liable for the tax as determined by the Comptroller. No further action was taken by the Comptroller with respect thereto for several months.

Meanwhile the Debtor, which is a corporation organized and existing under the laws of the State of New York, having its principal place of business at 370 Lexington Avenue, Borough of Manhattan, New York City, N. Y., engaged for many years as a common carrier in the transportation of persons and property in the States of New Jersey, New York and Pennsylvania, on May 20th, 1937, filed a petition in proceedings for reorganization pursuant to the provisions of Section 77 of the National Bankruptcy Act, 11 U.S.C. A. § 205. The petition was duly approved on that date and Frederic E. Lyford was thereafter appointed Trustee by order dated June 15, 1937, and qualified as such.

Subsequent thereto, the Comptroller of the City of New York, without having made any decision upon said protest and hearing upon the tax for the period ending December 31, 1935, determined the tax due under Local Law No. 30 of 1935, p. 157, for the period from Jan. 1, 1936 to June 30, 1936, in the amount of $3,401.13, and under Local Law No. 30 of 1936, p. 137, from July 1, 1936 to May 30, 1937, in the amount of $6,057.62, with penalties thereon aggregating $1,020.99, and on August 31, 1937, filed proof of claim with the Secretary of the Debtor for the entire sum claimed to be due in the amount of $24,995.59, including the said sum of $12,-940.06 as determined July 2, 1936, with the additional penalties thereon claimed to have accrued since the previous determination.

The Debtor likewise protested this further determination and applied to the Comptroller on September 2, 1937, for a hearing which was fixed for October 7, 1937, but at the Debtor's request was adjourned to November 8, 1937.

Meanwhile, objections and amended objections to the City's claim was filed in this proceeding.

By direction of this Court, the Trustee of the Debtor, on October 22, 1937, presented a report and recommendations upon all claims of creditors filed with him to and including October 1, 1937, the claim of the City of New York for said utility taxes being number 1.

Counsel for the Trustee thereupon requested a further adjournment of said hearing before the Comptroller until said claim number 1 could be adjudicated in this proceeding, which was refused, and applied to this Court by order to show cause for the relief herein sought and obtained a temporary stay.

Section 64a of the National Bankruptcy Act, 11 U.S.C.A. Section 104 (a), provides as follows: "The court shall order the trustee to pay all taxes legally due and owing by the bankrupt to the United States, State, county, district, or municipality, in order of priority as set forth in paragraph (b) hereof: Provided, That no order shall be made for the payment of a tax assessed against real estate of a bankrupt in excess of the value of the interest of the bankrupt estate therein as determined by the court. Upon filing the receipts of the proper public officers for such payments the trustee shall be credited with the amounts thereof, and in case any question arises as to the amount or legality of any such tax the same shall be heard and determined by the court."

The power of the Congress to enact such a statute is well settled. New Jersey v. Anderson, 203 U.S. 483, 27 S.Ct. 137, 51 L.Ed. 284. This court in a *bankruptcy proceeding* has jurisdiction to reexamine and revise a State tax and allow it for only the amount which appears to be justly due.

In City of Springfield v. Hotel Charles Co., 1 Cir., 84 F.2d 589, the Court said at page 591: "The power of state officials to determine and levy taxes must yield to the constitutional power of the federal government to establish what it regards as just rules *for liquidation* in bankruptcy." (Italics supplied)

Proceedings under Sections 77 and 77B, 11 U.S.C.A. §§ 205, 207, which are quite analogous, are not of the character of bankruptcy proceedings *in liquidation*. The maintenance of the latter depends wholly upon the insolvency of the alleged bankrupt whereas in proceedings for a reorganization a debtor may be insolvent or "unable to meet its debts as they mature."

An order of adjudication may not be entered and the petitioner is designated as "debtor" ·instead of "bankrupt." If the proceeding is dismissed neither the debtor's petition nor answer shall constitute an act of bankruptcy or an admission of insolvency, without the debtor's consent. Par. (a) §§ 77 and 77B. In proceedings under Section 77B, 11 U.S.C.A. § 207, when a plan of reorganization has not been proposed within the time fixed by the Court for that purpose, if insolvency is established the Court may make an order of liquidation, (Par. (c) (8), otherwise it may dismiss the petition. When an order of liquidation is made, and only then, is Section 64, 11 U.S. C.A. § 104, applicable (Par. (k) (5). Under Section 77, upon failure to consummate the purpose for which the petition for reorganization was filed, the Court may dismiss the petition but there is no authority for a liquidation. There are special provisions in the statute and in the rules adopted and promulgated by the United States Supreme Court not equally applicable to proceedings under Sections 77 and 77B, respectively.

Paragraph (j) of Section 77, 11 U.S. C.A. §·205 (j), for example, provides: "In addition to the provisions of section 11 [section 29 of this title] (of the General Bankruptcy statute which directs that a suit founded upon a claim from which a discharge would be a release, and which is pending against a person at the time of the filing of the petition against him, shall be stayed until after an adjudication or the dismissal of the petition) the judge may enjoin or stay the commencement or continuation of suits against the debtor until after final decree; and may, upon notice and for cause shown, enjoin or stay the commencement or continuance of any judicial proceeding to enforce any lien upon the estate until after final decree."

And then specifically excepts: "Suits or claims for damages caused by the operation of trains, busses, or other means of transportation" which may be filed, prosecuted to judgment in any court of competent jurisdiction and any order staying the prosecution of any such cause of action or appeal shall be vacated.

Paragraph (l) of Section 77, 11 U.S.C. A. § 205 (l) reads: "In proceedings under this section and consistent with the provisions thereof, the jurisdiction and powers of the court, · the duties of the debtor and the rights and liabilities of creditors, and of all persons with respect to the debtor and its property, shall be the same as if a voluntary petition for adjudication had been filed and a decree of adjudication had been entered on the day when the debtor's petition was filed."

My conclusion is that while Section 64 has no application to a proceeding under Section 77B until there has been an order of adjudication, it is applicable to a proceeding under Section 77, but the exercise of the authority thereby·conferred is entirely in the sound discretion of the judge before whom said proceeding is pending.

It is in the public interest that Federal Courts of Equity (and a Court of Bankruptcy is a Court of Equity, which has taken jurisdiction pursuant to the provisions of Section 77 of proceedings heretofore conducted in the nature of an Equity Receivership) should exercise their discretionary power with proper regard for the rightful independence of State governments in carrying out their domestic policy. It has long been the accepted practice for the Federal Courts to relinquish their jurisdiction in favor of the State Courts, where its exercise would involve control of or interference with the internal affairs of a domestic corporation of the State. There are stronger reasons for adopting a· like practice where the exercise of jurisdiction involves an unnecessary interference by injunction with the lawful action of State officials. Pennsylvania v. Williams, 294 U. S. 176, 185, 55 S.Ct. 380, 79 L.Ed. 841, 96 A.L.R. 1166.

It is not alleged by the Debtor, as, pointed out by Mr. Justice Stone in that case, at page 183, 55 S.Ct. at page 384: "That the procedure thus provided is inadequate, or that it will not be diligently and honestly followed."

It is to be noted, however, that while the taxpayer is limited to a thirty day period within which he may protest and demand a hearing and within which he may apply for a review by certiorari, there is no limitation upon the period within which the Comptroller of the City of New York is required to perform any duty imposed upon him. Had the Comptroller made and announced his decision with reasonable promptness after the protest of the Debtor and the hearing accorded to it upon the tax determined July 2, 1936, the Debtor might long since, if aggrieved thereby, have sought a review by certiorari in the manner provided by statute and at least saved

the accrual of penalties which it could not otherwise avoid when the Comptroller, in effect, redetermined the tax for the period ending Dec. 31, 1935 at the time of his determination of the tax as of May 20, 1937.

Counsel for the City of New York urges that if the Court determines that it has concurrent jurisdiction that it will surrender that jurisdiction to the Comptroller of the City of New York. This the Court will not do. It is entirely conceivable that a final determination of the liability for the tax here involved may be had in the State Court as soon as might be had here. The apparent reason for the enactment of Section 64, supra, was 'to expedite and facilitate the liquidation of bankrupt estates. There is no such urgency in this proceeding because the time within which the Debtor was directed by order of the Court to file its proposed plan of reorganization has already expired and the time has been extended to February 21st; 1938. But, on the other hand, the Court feels that it owes a duty in this case to keep the door open for the Trustee, if there should be any just cause to make a ·further application to this Court, and the petition will therefore be denied, without prejudice, and the stay vacated.

The order to be .entered to be settled on notice if not consented to as to form may fix the time when the hearing before the Comptroller of the City of New York will be had.