**In re ST. CHARLES HOTEL CO.**

No. 5908a.

District Court, D. New Jersey.

March 14, 1945.

Order Affirmed June 13, 1945.

See 149 F.2d 645.

324

Louis L. Goldman, of Camden, N. J., and J. Hector McNeal, of Philadelphia, Pa., for debtor.

Thomas H. Munyan, of Atlantic City, N. J., and Charles Gottlieb, of New York City, for creditors, Howard K. Hurwith and Frank K. Vidler.

George Zolotar and Richard V. Bandler, both of New York City, for Securities and Exchange Commission.

FORMAN, District Judge.

On December 8, 1944, the St. Charles Hotel Company, a corporation engaged in the business of owning a hotel in Atlantic City, New Jersey, filed a petition for reorganization under Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq. The petition set forth the debtor's financial condition as of October 31, 1944, and alleged, among other essential allegations, that the petitioner is in need of relief under the provisions of Chapter X, is unable to meet its debts as they mature and is desirous of effecting a plan of reorganization. This Court entered an order upon the same day approving the debtor's petition, appointing a trustee under bond and setting a date for a hearing to be held at which objections might be made to the retention of the trustee. At the request of the Court the Securities and Exchange Commission was asked to intervene, which it did on December 26, 1944.

An order to show cause entered upon the petition of Howard K. Hurwith, a creditor of the debtor corporation, why the order of the Court entered December 8, 1944 should not be vacated and why the petition of debtor of the same date should not be dismissed, was set down for January 12, 1945, the date of the hearing at which objections to the retention of the trustee might be made.

Howard K. Hurwith and Frank K. Vidler, each a creditor of the debtor corporation and each a holder of First Mortgage bonds, filed separate answers to the debtor's petition of December 8, 1944 on the 11th day of January, 1945, which deny that the petitioner is in need of relief under Chapter X, and which affirmatively allege (1) that the aforesaid petition was not filed in good faith because the interests of the creditors and stockholders would best be subserved in prior proceedings pending in the Court of Chancery of New Jersey, which proceedings were commenced by the filing on November 29, 1944 of a bill in equity by the holders and owners of First Mortgage bonds by reason of the debtor corporation's insolvency, and (2) that it was unreasonable to expect that a plan of reorganization can be effected which would adequately protect the interests of the bondholders.

Upon the return date of the order to show cause the Securities and Exchange Commission appeared and entered its opposition. The debtor corporation by its counsel adopted the argument of the Securities and Exchange Commission made at this hearing. The hearing of objections to the retention of the trustee was adjourned until such time as the questions raised in the order to show cause could be determined. The debtor corporation and the Securities and Exchange Commission were given additional time to support their argument in opposition to the application for the vacation of the order of the Court, dated December 8, 1944, and the dismissal of the debtor corporation's petition of the same date, by means of affidavit proof to be submitted at a final hearing to be held on January 26, 1945.

At the final hearing, the debtor corporation filed an affidavit, by its attorney, J. Hector McNeal, to the effect that the corporation had contemplated reorganization for the past few years and that a petition to be filed under Chapter X was prepared in early October 1944.

In support of its argument, the Securities and Exchange Commission filed an affidavit by its attorney in which the following points were made:

1. That the officers of the debtor corporation had considered instituting voluntary proceedings for reorganization under Chapter X for a number of years and had actually decided to file such a petition in October of 1944;

2. That the debtor corporation has unmortgaged assets amounting to $115,235.70 which will require a consideration of the rights and interests of classes of creditors other than the holders of the First Mortgage bonds;

3. That no proceedings for the foreclosure of the First Mortgage are pending and none has been threatened;

4. That the interests of security holders would best be subserved in these proceedings rather than in the prior proceedings in the Court of Chancery of New Jersey for the reasons:

(a) That the state court proceedings contemplate an equity receivership which Section 77B, 11 U.S.C.A. § 207, and Chapter X of the Bankruptcy Act were designed to improve and supplant;

(b) That judicial supervision is lacking in the state court proceedings and that it does not safeguard the rights, or protect the interests, of public security holders as adequately as the proceedings under Chapter X;

(c) That the state court proceedings do not offer facilities for reorganization contained in proceedings under Chapter X, as, for example, in the case of the approval of a plan of reorganization, it would be necessary in the former proceedings to raise cash to pay dissenting security holders;

(d) That the assets of this debtor corporation would revert to its custody if this court relinquished its jurisdiction because the state court proceedings have not advanced beyond the stage of the filing and service of the bill in equity and no receiver has been appointed;

(e) that there is no assurance that a receiver will be appointed in the state court proceedings in view of certain contested issues, such as assertions of mismanagement by the debtor's officers and directors, and improper and fraudulent leases.

The debtor corporation, appearing by J. Hector McNeal, stated that it intended to stand or fall on its original petition filed December 8, 1944 and that it did not intend to amend its petition in any way, even though such amendment might be necessary to sustain it and would be allowed by the court.

Section 146 of the Bankruptcy Act, 11 U.S.C.A. § 546, aids in the definition of the term "good faith" as used in the Act. It provides as follows:

"Without limiting the generality of the meaning of the term 'good faith', a petition shall be deemed not to be filed in good faith if—

"(1) the petitioning creditors have acquired their claims for the purpose of filing the petition; or

"(2) adequate relief would be obtainable by a debtor's petition under the provisions of chapter 11 of this title; or

"(3) it is unreasonable to expect that a plan of reorganization can be effected; or

"(4) a prior proceeding is pending in any court and it appears that the interests of creditors and stockholders would be best subserved in such prior proceeding. July 1, 1898, c. 541, § 146, as added June 22, 1938, c. 575, § 1, 52 Stat. 887." 11 U.S.C. A. § 546.

We shall concern ourselves with a discussion of subsections (3) and (4), for the objecting creditors contend that the facts of this case show that the petition failed to meet the requirements set forth in those subsections.

The most recent complete expression of the Supreme Court on this subject is contained in the case of Marine Harbor Properties v. Manufacturer's Trust Co., 1942, 317 U.S. 78, 63 S.Ct. 93, 87 L.Ed. 64. The property of the debtor in that case consisted of an apartment building in New York City subject to a first mortgage of $370,000, junior mortgages and other claims. The property was admittedly worth less than the first mortgage indebtedness. The court held that the debtor petitioning under Chapter X had not sustained the burden which was upon it to show that the interests of creditors and stockholders would be best subserved in the Chapter X proceedings where there was a prior state foreclosure proceeding pending. The court unequivocally places the burden of showing good faith on the petitioner. In the language of the court:

" * * * it seems clear that when a prior proceeding is pending, a petitioner's show-

ing of 'need for relief' under Ch. X, required to be contained in every petition by the express provisions of § 130(7), *must demonstrate that at least in some substantial particular the prior proceedings withhold or deny creditors or stockholders benefits, advantages, or protection which Ch. X affords.* In absence of such a showing the 'need for relief' has not been established and the District Court is not enabled to make an informed judgment on the 'good faith' issue." [Italics supplied.] Marine Harbor Properties v. Manufacturer's Trust Co., supra, 317 U.S. at page 84, 63 S.Ct. at page 97, 87 L.Ed. 64.

▬ The petition filed by the debtor corporation in the instant case contains an allegation of "need for relief" under Chapter X. On its face this allegation may be sufficient, provided it is not attacked, for in such instance, all interested parties in effect submit to the jurisdiction of the federal court and do not question the good faith of the filing of the petition. However, when attacked, as is this petition, it becomes the burden of such petitioner to demonstrate that its petition is filed in good faith. This petitioner has failed to sustain that burden, for it failed when given the opportunity by the Court to support its petition to show that it is reasonable to expect that a plan of reorganization could be effected and that, although a prior proceeding is pending in the state court, it appears that the interests of creditors and stockholders would not be best subserved in such prior proceedings, which were the points upon which it was attacked by the objecting creditors.

In this case the Securities and Exchange Commission attempted to support the debtor corporation's petition by shouldering the burden of showing good faith.

The court in which a petition is filed has exclusive jurisdiction of the debtor and its property. 11 U.S.C.A. § 511. It is within the discretion of the court whether the petition should be approved. The court must be satisfied that the petition complies with the requirements of Chapter X of the Bankruptcy Act and has been filed in good faith. 11 U.S.C.A. § 541. This determination must be based on the proofs. 11 U.S.C.A. §§ 543, 544. The relief offered by the Bankruptcy Act is available to the creditors as well as the debtor. When the jurisdiction of the court is invoked by either, it is within the right of the court, and was in fact intended by Congress, that it should be its duty to consider whatever evidence it deems necessary to base its determination of approval or disapproval of the petition. A bankruptcy proceeding is of necessity one in which the debtor and its property is placed in the hands of the court. The varying interests of many different parties make it essential that in exercising its discretion the court inquire into every phase of the case so as to balance the equities as best it can.

▬ The objecting creditors, Howard K. Hurwith and Frank K. Vidler, contend that the affidavits of the Securities and Exchange Commission may not be treated as an amendment of the petition, for under the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, one party is not permitted to amend another's pleadings. This position is not tenable for several reasons. As indicated, the Bankruptcy Act does not contemplate that the court should consider the position of each party separately but rather with a view towards an equitable disposition as to all concerned, keeping in mind their respective rights and interrelationships. Its responsibility towards one party is no greater than its responsibility towards another party. Since the debtor or any creditor may invoke the court's jurisdiction by filing a petition, it follows that any one or more may attempt to sustain the burden of establishing the good faith requirements under which the petition must be filed. The court, in its role as the protector of the rights of all concerned as well as the rights of one against the other, cannot prefer one party over another because that party is more cognizant of his rights and sees fit to act more timely and in his own interests. The action of that party must be considered as if pressed by all those similarly situated where the determination affects the rights and interests of many parties subject to its jurisdiction. As is said by the Supreme Court, "A bankruptcy court is a court of equity, § 2, 11 U.S.C. § 11, 11 U.S.C.A. § 11, and is guided by equitable doctrines and principles except in so far as they are inconsistent with the Act." Securities and Exchange Commission v. U.S. Realty Co., 310 U.S. 434, 455, 60 S.Ct. 1044, 1053, 84 L.Ed. 1293.

▬ With these considerations as a basis the Court is constrained to the proposition that it must take note of all evidence before it, including argument of counsel, in its determination of good faith under Chap-

ter X. The point made by the Securities and Exchange Commission that there is no necessity to amend a petition in order to sustain it as filed in good faith, and that the issue may be met by oral testimony in the event of a trial, or by affidavit proof if on a motion, is well taken. The petition will be considered as if conformed to the evidence by way of affidavit. Any technical difficulties may be so cured. In re Equity Co. of America, 7 Cir., 115 F.2d 570, cited by Securities and Exchange Commission.

Although the argument was not pressed by the objecting creditors, it should be noted that the debtor corporation in the final analysis declined to amend its petition in any respect. Were this to be considered "lack of prosecution" of the petition by the debtor corporation or even lack of good faith on its part in that respect, the Court would still be entitled to weigh the affirmative proofs offered by other parties and base its good faith determination thereon. The debtor in this case has no equity in the property. Therefore, it is not surprising to find that its interest in the proceeding has lagged. The Court, having obtained jurisdiction by the filing of the petition, is in a position to equitably deal with all parties involved even though many of them are apathetic to their own interests to the extent that none but the objecting creditors appeared, whether by reason of ignorance, laxity, lack of funds or otherwise.

 Primarily, the Securities and Exchange Commission was set up to safeguard the rights of the investing public. Securities and Exchange Commission v. U. S. Realty Co., supra. Its recommendations must be considered with that object in mind. In this case the Securities and Exchange Commission serves the useful purpose of presenting to the court an over-all view of the case which embraces the interests of the aforementioned absent parties. The court is bound to recognize all proofs before it in arriving at its determination of good faith. That the Securities and Exchange°Commission is a party in interest and entitled to be heard in all matters cannot be disputed. 11 U.S.C.A. § 608.

The Supreme Court recognizes the relationship of the public interest in bankruptcy and the part which the bankruptcy court plays as a court of equity. This is evidenced by its remarks following those quoted above in Securities and Exchange Commission v. U. S. Realty Co., supra: "A court of equity may in its discretion in the exercise of the jurisdiction committed to it grant or deny relief upon performance of a condition which will safeguard the public interest. It may in the public interest, even withhold relief altogether, and it would seem that it is bound to stay its hand in the public interest when it reasonably appears that private right will not suffer. Pennsylvania v. Williams, supra, 294 U.S. [176], 185, 55 S.Ct. [380], 385, 79 L.Ed. 841, 96 A.L.R. 1166, and cases cited; Virginian R. Co. v. Federation, 300 U.S. 515, 549, et seq., 57 S.Ct. 592, 600, 81 L. Ed. 789." 310 U.S. 434 at page 455, 60 S.Ct. 1044, at page 1053, 84 L.Ed. 1293.

We conclude that the evidence and argument presented by the Securities and Exchange Commission may be considered in determining whether the petition under consideration meets the requirements of good faith under Chapter X.

██ Primarily, the Securities and Exchange Commission objects that the application to dismiss the petition of the debtor filed on behalf of the objecting creditors did not particularize grounds for the dismissal of the proceedings on the basis of defects on the face of the debtor's petition.

The Commission further urges that any issue created by the application by reference in it to the creditors' answer is one, which the Commission, in its effort to support the debtor's petition, is entitled to meet "by the introduction of competent proof."

While the application of the objecting creditors is not artful in its draftsmanship, it sufficiently incorporates the essentials of the answer. The answer affirmatively strikes at the essential of good faith when it sets forth that the interests of the creditors and stockholders can best be subserved in the prior state court proceedings and that no feasible plan for the reorganization of the debtor can be proposed which would provide adequate protection for the bondholders and other creditors.

An opportunity was granted to both the debtor and the other parties to file affidavits pertinent to the issue. The debtor corporation and the Commission filed such affidavits and they have been considered. Thus the issue is squarely framed. The Court has before it sufficient material to resolve the issue and make a determination as to whether the petition of the debtor corporation should stand or fall, based up-

on the full record before the Court which includes the affidavit of counsel for the debtor corporation, the affidavit and argument of counsel for the Securities and Exchange Commission, and the pleadings and arguments of the objecting creditors.

The Supreme Court in the case of Marine Harbor Properties v. Manufacturer's Trust Co., supra, held that upon the facts appearing therein the burden of satisfying the court of good faith in the filing of the petition was not sustained. Mr. Justice Douglas, who delivered the opinion of the court, pointed out that if there was a need to safeguard junior interests where a prior foreclosure proceeding cannot do so, or a showing that the rights of first mortgagees are being prejudiced or jeopardized in a prior foreclosure ‚proceeding, even if no showing is made of need for relief by junior interests, such evidence would demonstrate good faith and warrant an approval of a petition. He found that the property being worth less than the amount of the first mortgage indebtedness, it was not apparent that the equity owners would be denied advantages or protection afforded them under Chapter X by the prior state foreclosure proceeding.

In the case at bar the book value of the mortgaged assets is listed at $1,417,819.62 as of October 31, 1944. It is alleged in the debtor corporation's petition that their value is "in excess of $250,000". The unmortgaged assets as of the same date amount to $115,235.70. On the liability side the debtor corporation has outstanding first mortgage bonds in the principal amount of $2,380,500, of which, bonds to the principal amount of $152,500 are held in the treasury of the debtor corporation, leaving bonds in the principal amount of $2,228,000 outstanding in the hands of the investing public. No interest has been paid on these bonds since 1932 and the accrued unpaid interest as of October 31, 1944 totals approximately $2,023,424.41. In addition, the debtor corporation has general mortgage bonds outstanding in the amount of $153,000, which bonds are also in default since about 1932 and on which there is accrued unpaid interest of approximately $221,793.30. Preferred stock of the par value of $452,000 and common stock of no par value in the amount of 9144³/₁₀ shares are also outstanding.

In all, the debtor corporation has outstanding liabilities in the form of bonds and interest thereon in excess of $4,500,000. Its liability upon the first mortgage bonds which are preferred is in excess of $4,000,000, which is approximately $2,500,000 more than the value of the assets of the corporation as listed on its books.

A fresh contribution in return for "a participation reasonably equivalent to their contribution" must be made in order to admit stockholders into a plan of reorganization which would be fair and equitable. Case v. Los Angeles Lumber Products Co., 308 U.S. 106, 60 S.Ct. 1, 84 L.Ed. 110; Northern Pacific R. Co. v. Boyd, 228 U.S. 482, 33 S.Ct. 554, 57 L.Ed. 931. Applying the facts in the Marine Properties case to the rule it previously laid down in the aforementioned cases, the Supreme Court stated: "That rule obtains under Ch. X as well as under its predecessor, § 77B. There is no suggestion in the record that the equity owners desire to make a contribution on that basis and that unless they are allowed to do it under Ch. X, they will be barred." Marine Harbor Properties v. Manufacturer's Trust Co., 317 U.S. 78 at pages 85-6, 63 S.Ct. 93, at page 97, 87 L. Ed. 64.

It must, therefore, be shown that junior encumbrancers, unsecured creditors or stockholders desire to make a contribution as a basis for the issuance of new securities to them if it appears that the debtor corporation has no equity over its first mortgage indebtedness and that their participation cannot be effected as well in the prior proceedings.

It is apparent that any reorganization that is possible under Chapter X in this case could not affect the stockholders or any creditors other than the first mortgagees, unless there is to be a considerable contribution of new capital. There has been no suggestion that such contribution has been, or is being, considered. Consequently, there is no need to safeguard the junior interests or to be cautious in considering plans which may prejudice or jeopardize the rights of those other than the first mortgagees.

It was contended in the Marine Properties case, as it is contended by the Securities and Exchange Commission in this case, that there are numerous safeguards contained in Chapter X that are lacking in the state court proceedings. In that case the Schackno Act of New York, N. Y. Laws 1933, c. 745, Unconsol. Laws N.Y. § 4871 et seq., was involved, whereas we are concerned with proceedings authorized

under the New Jersey law in insolvency, receivership and reorganization. Title 14, Chapter 14, Revised Statutes of New Jersey of 1937, N.J.S.A. 14:14. We need not examine the differences between the two procedures, for the Supreme Court fully answers this contention as follows: "Those considerations would be highly relevant and persuasive if this was a case of the usual reorganization proceeding dealing with more than one class of securities under the older procedures which Ch. X was designed to improve and supplant. See Securities and Exchange Commission v. United States Realty & Imp. Co., supra, 310 U. S. [434], at page 448, 60 S.Ct. [1044], 84 L.Ed. 1293; H.Rep. No. 1409, 75th Cong., 1st Sess., pp. 37 et seq. Then the safeguards afforded by Ch. X would have special significance in protecting the respective classes of investors against improvident, unfair or inequitable adjustments, compromises, and settlements—steps which are basic to the reorganization process but which in selfish hands led to much abuse. H.Rep. No. 1409, 75th Cong., 1st Sess., pp. 73 et seq." Marine Harbor Properties v. Manufacturer's Trust Co., 317 U.S. 78 at page 87, 63 S.Ct. 93, at page 98, 87 L.Ed. 64.

▓▓▓ An objective comparison of Chapter X proceedings and state court proceedings for the purpose of pointing out advantages in the former to show that the interests of the equity holders would be best subserved in the federal courts alone cannot be used to sustain a petition. In most instances the advantages of the federal proceedings have proven to be numerous. But it was not intended that Chapter X should supplant similar state proceedings. To avoid such a result, Congress specifically provided that it must appear that there is a "need for relief" under Chapter X and that the burden of showing such need is upon the one who seeks to sustain the filing of the petition as made in good faith. No specific advantage is advanced to show that this debtor corporation has need for relief under Chapter X. There are no specific facts before the Court to evidence that the interests of creditors and stockholders would best be subserved in these proceedings rather than in the prior state court proceedings.

In the language of the Supreme Court: "In view of the burden on a petitioner to make the showing required by § 130(7) and § 146(4), the bankruptcy court is not warranted in assuming without more that a state foreclosure proceeding instituted for and on behalf of the first mortgage creditors exclusively is inadequate, measured by Ch. X standards, to protect their interests. The contrary course would result in Ch. X making greater inroads on prior proceedings than § 130(7) and § 146 (4) indicate was the purpose." Marine Harbor Properties v. Manufacturer's Trust Co., 317 U.S. 78 at page 88, 63 S.Ct. 93, at page 98, 87 L.Ed. 64.

In fact, it appears from the record that if a plan of reorganization is effected it could consist of no more than an equivalent to a foreclosure of the rights of all creditors and stockholders other than the first mortgage bondholders. Whether the corporation be liquidated and the lienors paid off, whether foreclosure proceedings be taken and the property sold to the lienors, or whether the first mortgagees convert their bonds into stock as evidence of their ownership, the effect and net result would be the same—the first mortgage bondholders alone may participate in the proceedings and determine the ultimate form of their holdings. No showing has been made by the debtor corporation or the Securities and Exchange Commission, as the proponent of its petition, that this result cannot be obtained in the suit in the New Jersey Court. See N.J.S.A. 14:14, supra.

Our attention has been directed to the case of Fidelity Assurance Ass'n v. Sims, 318 U.S. 608, 63 S.Ct. 807, 87 L.Ed. 1032, wherein the Supreme Court held, among other reasons, that in the light of facts showing that the liabilities of an insurance company which had done business in several states, exceeded its assets by a large sum, it was unreasonable to expect that the company could be reorganized as a going concern. Receivership and liquidation proceedings in state courts having been instituted, the Court declined to permit the application of Chapter X notwithstanding the contention made by the Securities and Exchange Commission in the case that it would insure an orderly liquidation in the interests of all and be advantageous as affording opportunity for impartial investigation of wrong doing by company officers, besides solving problems of marshaling and distribution.

The Securities and Exchange Commission sought to blunt the effect of the Sims case by the pronouncement of the court in

the case of Country Life Apartments v. Buckley, 145 F.2d 935. In the latter case the Second Circuit Court of Appeals affirmed the district court in its approval of a plan for reorganization which provided for the sale of the debtor's property at not less than a given upset price and the distribution of the proceeds among those having an interest therein. The proceedings had progressed to a point where the plan embodying the scheme had been approved by the court without appeal. The objection was raised at the time for confirmation of the plan and by way of an offer of a substitute plan. The court declined to justify the attack upon such a plan as a liquidation and held it to be a reorganization within the contemplation of the Bankruptcy Act, Section 216(10), 11 U.S.C.A. § 616(10). However, this argument does not meet the situation before us because in the Country Life Apartments case there was no challenge of the good faith of the debtor's petition and there was no showing that there were any prior proceedings in a state court.

In the affidavit of J. Hector McNeal, attorney for the debtor corporation, it is alleged that the debtor corporation considered its petition for a number of years prior to filing and had decided to institute this suit before the prior proceedings in the state court had been commenced. This does not aid the argument of the Securities and Exchange Commission. The dates of the filing of the respective petitions are controlling and the state court proceedings here antedate the federal court suit by nine days.

The Securities and Exchange Commission pointed out that the debtor corporation has accumulated a fund of $115,235.70 not covered by the lien of any mortgage, to which various contestants will probably lay claim. Neither this sum nor any forseeable future income is large enough to affect possible plans for reorganization in the light of the size of the lien of the first mortgage bondholders. Notwithstanding the insistence of the Securities and Exchange Commission that this presents a problem peculiarly for the federal court, there is nothing to indicate that the fund cannot be adequately and equitably administered by the New Jersey Court of Chancery and distributed to the creditors who are entitled to their respective portions of it.

The Securities and Exchange Commission submitted that there is no prayer in the state court suit for foreclosure, but that it constituted merely a bill in equity for a receiver. We find no materiality in the distinction, for the Marine Properties case has pertinent application to the New Jersey equity proceedings, even though they are not essentially foreclosure proceedings.

The Securities and Exchange Commission suggested that the state court suit consists of nothing more than a petition filed by the objecting creditors in this cause, that no receiver has been appointed therein and that there is no assurance that one would be appointed. Such suggestion can have scant consideration because the injunctive order of this court has interrupted the state court proceedings and prevented a determination on the issues raised therein.

The arguments of the Securities and Exchange Commission that the insolvency of the debtor corporation does not render a plan of reorganization unreasonable, that it is not necessary for stockholders to participate in such a plan, that the insolvency of the debtor corporation is not per se evidence of bad faith and that the statute contemplates that it is the interest of either the creditors or the stockholders that will be best subserved, are sound propositions of law, but have no pertinent application in this case.

One of the issues raised by the objecting creditors is that it is unreasonable to expect that a plan of reorganization can be effected which would adequately protect the interests of the bondholders. Upon this challenge the burden of showing it is upon those who seek to sustain the petition under Chapter X. The only proof before the court bearing on this point is the debtor's statements, contained in the petition, which show assets valued at anywhere from the lowest figure set forth therein ($250,000) to the value as listed upon the books of the debtor corporation ($1,417,819.62), plus a small amount of current assets and investments in actual value, and liabilities in excess of approximately $4,500,000, more than $4,000,000 of which represent outstanding liability on the First Mortgage Bonds. Upon the basis of these uncontroverted statements, without any showing of anticipated contributions of new capital or expectations of any plan or plans of reorganization, we conclude that the burden upon the proponents of

the petition in this respect has not been carried and that for this reason the petition "shall be deemed not to be filed in good faith." 11 U.S.C.A. § 546(3), supra.

On the other issue raised by the objecting creditors the recent case of In re *Biltmore Grande Apartment Bldg. Trust*, 7 Cir., 146 F.2d 81, is in point. A dismissal of two petitions filed for reorganization under Chapter X for the reason that the petitions did not comply with its requirements and that they were not filed in good faith in that the petitioners failed to sustain their burden of showing that the interests of creditors and stockholders would best be subserved in the federal proceedings, was affirmed by the Circuit Court of Appeals for the Seventh Circuit as a correct interpretation and application of the principles announced in the Marine Properties case. The following excerpt from the opinion of Judge Duffy, of the Eastern District of Wisconsin, 59 F.Supp. 1000, contains his reasoning in that case:

"The Biltmore property is assessed for taxation at $273,000 ($58,000 for the land and $215,000 for the building). The trustees in their petition for reorganization allege the value to be $315,000, and that there is no equity. In the foreclosure complaint the bondholders allege the value to be $325,000. From the trustees' report it appears that the average annual income before depreciation for the years 1940, 1941, 1942 and 1943 was $18,000. Assuming that there may be thirty years of economic life remaining in the building, there would be a capitalized earning value of about $250,000.

"It is apparent that there is no equity beyond the interest of the first mortgage bondholders. The principal of the first mortgage debt is $313,800. Two years of unpaid interest at 6½% amounts to $40,794. Assuming that there has been no waiver of the difference between the 6½% fixed on the bonds and the 5% actually paid in the past seven years, there would be an additional $32,949 due, or, a total of principal and interest of $387,543. In addition, there are second mortgage notes with accrued interest amounting to $63,572 and notes payable of $15,250. I conclude that the value of the Biltmore property plus the cash on hand is considerably less than the first mortgage debt.

"The circumstances of this case bring it within the rule announced in Marine Harbor Properties, Inc. v. Manufacturers Trust Co., 317 U.S. 78, 63 S.Ct. 93, 87 L.Ed. 64, and In re Cook, 7 Cir., 104 F.2d 981. The burden is on the petitioners to show that pending State court proceedings withhold or deny to creditors or stockholders benefits or protection which Chapter X affords, 11 U.S.C.A. § 501 et seq. They have not done so. Furthermore, there is no showing that the holders of junior lien or unsecured creditors or stockholders desire to make a contribution which would be the only way in which they could participate in a plan of reorganization."

We believe that the analogy is striking and that the similar facts disclosed in the case at bar are directly within the ruling of the Supreme Court in the Marine Properties case. We further conclude that the proponents of debtor's petition have not carried the burden of showing that the interests of creditors would best be subserved in the federal proceedings. 11 U.S.C.A. § 546(4).

Debtor's petition must be dismissed for failure to show the "need for relief" under Chapter X. 11 U.S.C.A. § 530(7).

On notice of settlement an order will be entered dismissing the petition of the debtor and vacating the order of this court entered December 8, 1944 and requiring the Trustee appointed by this court to file an account of all cash and property received, and disbursements made, by him, after the allowance of which account the balance of debtor's property remaining in his hands shall be by him returned to it.